At this time, would counsel for the appellant please come to the podium and introduce himself on the record? Good afternoon, Your Honors. My name is Robert Peabody. I'm of counsel with the firm of Hush Blackwell in Boston, and I represent the appellant, SpineFrontier, Inc. May it please the Court, SpineFrontier has appealed the March 7, 2025, of Indira Tilwani's order in this case just before trial was intended to begin last March. Counsel, do you want to save any time for rebuttal? Oh, yes. Excuse me. Two minutes, if I may. Thank you for reminding me.   And her order basically says that if the defendant, Aditya Humad, chooses to raise a defense at his trial, that there were lawyers in the room, the so-called presence of counsel, and then argue later to the jury, or his counsel argue to the jury, that they can draw, or would they consider drawing an exculpatory inference that his mindset, his mens rea, was suggested that he didn't commit a willful violation of the anti-kickback statute. And she said, if you do that, then I'm going to do two things. First of all, I'm going to instruct the jury not to draw an exculpatory inference, and I'm also going to impose an applied waiver of the attorney-client privilege, and provide relevant documents between Mr. Humad's conversations with his attorney at the time, it's a firm called Lenny. But wouldn't that have been an either choice? She said or. Yeah, because it would be, right? Because if we give the documents, and then there's a full vetting of this whole thing, it seems to me, then okay, we can argue whatever we want, because all the facts are on the  And the concern seems to be that if we only go with, you know, you're just going to say the lawyers are there, and then we don't fully vet what happened with the lawyers, then we don't really have the basis to make that argument. Isn't that what happened? I think that's a fair estimate, certainly. I think planning ahead what would happen in the trial, the evidence would come in that there were lawyers in the room, at this point, to question what the Q&As would be related to that, but at closing, then they would argue that they could draw an exculpatory inference. She would, I think the court would then, if you're going to do that, and it's clear on the record, then I'm going to produce the documents to the government for them to review, just those between Humad and the lawyer at the time. Counsel, I just want to understand the scope of your argument to us, so is it your position, are you essentially asking us to adopt a per se rule that a corporate officer could never impliedly waive a corporation's privilege? What's your position? I think the cases are all over the place. I think one of our main points is that Aditya Humad did not have the authority to waive the privilege on behalf of his company, who he worked for, Spine Frontier, in his capacity as the chief financial officer. That that vested or rested with the president or the CEO of the company, Dr. Kingsley Chin, who founded the company, owned 100% of the stock, and was the sort of moving force behind Spine equipment and nuts and bolts and so forth. So you're not arguing for a per se rule, you're really focused on saying that this particular corporate officer, in this case, can't impliedly waive. Exactly. And I think by imposing this order, this chilling effect, and specifically telling Spine Frontier, telling Humad that she would impose or imply a waiver of the privilege, it's our contention that she exceeded her flexibility in this case, and we would ask this court to let things be as they are. In other words, let him make this defense, but not impose the implied waiver, and let him argue at closing that they may, the jury may, draw an exculpatory inference. Certainly I would think she'd instruct the jury very carefully what they can and can't do with an inference, but I think the government would certainly be free to argue an inference that it was an inculpatory inference based on... Counsel, I want to be sure I understand what you're arguing. Is your first argument that, on the facts here, because of his position with the company, it would not be appropriate to imply from his conduct a waiver? That's your first argument? That's the primary argument, yes. But then, even if we were to disagree with that, would it be your position that, even though, given his position, it might be fair as a generality to infer a waiver, that on the facts here, it would be inappropriate to impose the remedy, if you will, that the court imposed? I think I'm arguing both things, certainly that he doesn't have the authority to waive the privilege, and the company has weighed in, in this case, and said it's their privilege, he can't take that on their behalf, and what's more, that rests solely with Dr. Chin, who is the CEO and the primary person in the firm. So to answer your second question, yes, that aside, yes, I think it would be unfair and a breach of her discretion to then just imply a waiver, nonetheless. What exactly do you think prevents Mr. Humad from having the authority to waive here? This is a closely held corporation, there are only a handful of officers, he's the CFO, he certainly has a very high position in the company, so what exactly would you point to as the critical part of your argument about why he can't waive? Well, I think the government has made a point that if you look at the Secretary of State Smilings in Massachusetts, he is an officer of the corporation, and he is the chief financial officer of the corporation, but that is it, Kingsley Chin, Dr. Chin is the CEO, president, etc. So just the rule that only one person can do it? No, I think in different circumstances, I think other people can, general counsels often sometimes can waive on behalf of the company, that's not this case. So what does one think about to figure out when you can and when you can't? Well I think in this case, and it's not necessary before you in the briefs, but I think this case has had such a long lifespan, several years in litigation before Judge, well actually it was a prior judge before Judge Talwani, it's self-evident in this case that Kingsley Chin is the sort of core person in this corporation, founded it, owns the stock, makes the decisions, recruited the doctors, etc., designed the pins and needles and so forth used, and Mr. Humad was this chief financial officer, was an employee of the company who had no ownership interest. So between those two people, and that essentially is the company. But counsel, isn't that, I mean, their respective roles in the corporation, that's only one factor to consider, that can't be the sole factor, I mean, certainly unfairness to the government is an important consideration, it seems to me, with respect to both factors. I mean, this is, I mean, the notion that Mr. Humad could invoke the involvement of lawyer defense, and yet the government could not then cross-examine to point out that the advice that the company was given was premised on all of these assumptions as to how this consulting arrangement would work. I mean, that would be... So you make a good point, Your Honor, in addition to the fact that I don't believe he has the authority to do so, juxtapose Dr. Chin, he has also said that he has no intention of waiving the company privilege, and he has no intention of disclosing in his defense, his presence of counsel defense, any communications between him and the other lawyers. So he's sort of belt and suspenders along with the company, he said, I'm not seeking to waive it as well. The government is arguing that he does have the authority to waive it, they're seeing a sword and a shield situation going on here. But, counsel, those are two separate questions, whether he can waive it, and impliedly, we understand he's explicitly not seeking to waive it, that's one issue, can he waive? And then the second one is, is this the kind of defense that actually results in a waiver? And I think you've just kind of put those two things together, but we were trying to find out what about... You keep referring to the circumstances, what about the circumstances make it impossible for this CFO to impliedly waive here? And so is your answer essentially that because there are only really two officers, it's clear that it's the other officer is the only one that can waive for this corporation? That's your position. Well, if he's the only one and belt and suspenders, he doesn't choose to waive it either. I know that's not what you're asking, but I think it's important. If he was, he'd be creating the crisis between him and his employer, or him and the company, but he's not. So moving to the second issue, which is, is this the kind of defense that actually necessitates a waiver? I think you mentioned in your argument, and I saw this in the briefs, the phrasing of lawyers in the room, but my understanding is we're not actually talking about the physical presence of lawyers in a room per se here. Really, it seems to me what Mr. Humad wants to assert at trial, based on my review of the filings below, is he wants to say that lawyers were involved, just like Judge Lopez just indicated, were involved, the outside counsel was involved. It submitted this opinion letter, and the involvement of the lawyers somehow negates his mens rea. Is that your understanding of the defense? Yes, that's my understanding. I'm being a bit glib by saying lawyers in the room, but as the lawyers were retained by Spine Frontier, their name was Haney and Strong, and they provided an opinion letter with an attachment to a draft consulting agreement, and that is what the topic of their, not their communications, but the topic of their legal services. Yes, that's what he would want to go before the jury. And obviously, the opinion letter itself is not attorney-client privilege because it was distributed outside the client. And it's going to come into this case one way or another. I suspect if the defense doesn't offer it, the government will because it's an important piece of the evidence that I think they want to, I'm not speaking on their behalf, but I think from my own experience, they would want to offer it. So it would come in anyway, or it would likely come in, and therefore it's in play as not just the presence of counsel, but the involvement of counsel with Spine Frontier, absent any communications. And the waiver that the court's imposing saying is, no, no, we want to know what those communications are. We want the government to be able to read the correspondence, and we want to be able to question Humad about those information, as if he is actually making a full-born advice of counsel defense, which he is not. But what is the difference? Because at the end of the day, the idea is, I would never have done something illegal because there were lawyers involved, but if I didn't tell the lawyers those things that make it illegal, and I tell them a whitewashed version of the story, then their presence doesn't really mean very much. So why should you get to make the argument, there were lawyers there, and then withhold the information that gives color and understanding to what that statement means? So it seems to me, like the Bankman Freed case, you either rule it out because you can't just make that argument and just let it hang there, or you get to make that argument and the government gets to cross-examine with and understand, to present the whole story so a jury can evaluate it. And you're saying because he didn't full-thoroughly stand up and say, waiver, he gets to make this half-argument that's very beneficial to him, doesn't give the government a fair chance and the court should let it in. I mean, it can't be all of those things. Well, I think, Bankman Freed, I thought, was an interesting case, because I read that as Judge Kaplan allowed Bankman Freed to present that defense, that there were lawyers in the defense of counsel, and he wanted to question about, there were four categories and one only survived, but he asked him questions, you know, outside of the view of the jury, what is this? Not the communications, there's no reference to communications from the lawyer, simply what was the topic that you met lawyers with and about, and the matter that he allowed in was this document retention program that they were going to impose at the company. And he let him have it. And he took the stand and he talked, I talked to the lawyers about this document retention program and there was enough to question, I mean, he had a, the government could question him about that, but not about the privilege, not about the communications he had with the lawyer. And I think, you're not waiving the privilege, in my experience, if you just, if you're asked a question, did you hire a lawyer? I did. And what did you hire him for? To represent me in this matter, or to represent me in connection with this consulting group. But the problem is that you're going to stand up in the closing and say, and you should acquit because he doesn't have the mens rea because there's a lawyer there. And that's an inference that with no back and forth is not fair to draw, so it should be excluded, or there should be information so that there can be a full airing of what to make of it. Well, Judge Sorokin, in a case here, in this court, in a securities case with the SEC did, the defendant wanted to present evidence that he hired a top lawyer to look at advertising materials in a securities case. The government wouldn't eliminate or block him. He said, and Judge Sorokin said, no, it's admissible. It goes to his center. It goes to his intention. And the jury can make that determination with proper instructions and guidance whether they want to take that into consideration. But no privilege was waived. No communications were waived. It is a version of the advice of counsel defense, but it's not the full-blown advice of counsel defense because it hasn't been declared. Because that is when you rely, you just say, like, here's the letter that says I can do this, and therefore, of course, I didn't think it was illegal because my lawyer said I can do it. Right? That's the advice of counsel defense. Advice of, I think, yes, that's the advice of counsel defense. Right. And this is sort of a, you know, I'm going to do less than that, and I'm just going to try to fill in all the gaps by just arguing it. Well, Judge Ruth Bader Ginsburg said in her case, the white case, if you don't let the defendant report the fact that he had a lawyer and the topics that were covered, there's no reason for a person like him, for a defendant to go get legal counsel in the first place. So it is, as Gorski says, a broad and colloquial version of the full-blown advice of counsel defense. So this, I must say, this distinction between the so-called full-blown advice of counsel and involvement of counsel, it really does sound a bit like a distinction without a difference. I mean, this is a, I gather this is a court-created hybrid of some kind? Well, the cases that I've read, we have Gorski, we have White from the District of Columbia Circuit, and there's Judge Sorokin's case where he addresses that it's admissible because it goes to the state of mind of the defendant. And you can take it or leave it, jury, if you want, but there is some benefit or there is an argument to be made that they hired lawyers. Now, I suspect the government is in a position, based on other evidence in the case, they'd welcome this because they would probably present evidence to suggest that there's other evidence of violations, alleged violations, of the Anti-Kickback Statute, so it may fall flat. But I don't think it's, I think for judges to start imposing implied waivers when the parties don't want to waive the privilege and just present a limited defense in this context, I think would be a reach. And I don't think there are many cases, Judge Kaplan did a 401-403 way. Is it probative? Is it not probative? He didn't impose a waiver, implied waiver of the privilege. He limited it to just exactly what Bagman-Freed wanted to talk about, and whether it helped or not, probably not. But I think there is room for this kind of explanation, this kind of argument to be made. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the government please introduce yourself on the record to begin? Good afternoon. May it please the court, Karen Eisenstat for the government. Unless the court has a different preference, I want to start with the fairness issue involvement in counsel defense that I think counsel was just discussing. So this court has said implying a waiver based on fairness considerations requires fastidious sifting of the facts. It's fact specific, and that's what the district court did here. The government recognizes the involvement of counsel defense umbrella, that term, whatever it means, covers many different types of arguments short of a vice counsel defense. And it's the specifics of what the defendant wants to argue to the jury that determines if fairness requires a waiver. So for example, if there were a situation where a supervisor told a lower level employee, hey, counsel signed off on this thing, so go ahead and do it. And that employee was never privy to what counsel said, that wouldn't probably require any waiver over what counsel said. It didn't affect the defendant, lower level employee's mens rea, because he never heard it, right? So that would be a counsel related defense that doesn't require waiver. And Bankman Freed, which counsel has been referring to, as I understand it, the reason waiver wasn't discussed in that opinion is because Bankman Freed admitted he never actually asked the lawyer about the thing at issue. So there's nothing to waive over. There wasn't actually any advice over the issue. So the issue is just admissibility of the defense. The variation that Defendant Humad advances is one where he personally was involved in the conversations and received advice. And his argument is, I consulted counsel before acting and, quote, given counsel's role and responsibilities, counsel would be expected to recognize potential wrongdoing and speak up. Therefore, the jury may infer I acted in good faith. And though this argument doesn't explicitly rely on the content of counsel's advice, it necessarily does so implicitly, because that good faith inference obviously doesn't follow unless the jury assumes that you didn't lie to counsel about what you're doing and that counsel's advice was favorable to you, that this is good. So if counsel heard the facts and said, no, don't do that, that's illegal, and then you did it anyway, that's not indicative of good faith. That's indicative of bad faith. Counsel, can I ask you, because obviously Mr. Humad is not here, which is one of the awkward aspects of this appeal. I've been trying to understand what exactly is the defense that he's seeking to put forward and obviously look through the filings, but I understood it a little bit differently from what you just said. It's a please tell me if I'm wrong and I missed something in the district court docket. I understood him to be pointing to the involvement of the outside law firm in blessing the consulting arrangement generally, and specifically him pointing to the opinion letter and wanting to argue to the jury that an outside law firm signed off on this consulting arrangement writ large, therefore allows the jury to draw potentially an inference that he didn't have the requisite mens rea. Is that incorrect? Is he trying to actually invoke a specific communication between the outside law firm and himself that would be privileged? Because obviously the opinion letter is not privileged. Right. So the opinion letter is not privileged. What defendant Humad is indicating he wants to do is be able to elicit evidence beyond just the opinion letter that, yes, we consulted counsel, counsel was involved in every aspect of this consulting program. So those are all words based on his characterization of his defense. And then to argue to the jury that therefore you may infer that I acted in good faith when I did things with this consulting program. So implicit in that is the jury must assume that whatever counsel said to me was in the vein of if this is legal and you may do it. Whatever sort of underlies the opinion letter then supports finding that this was a legal thing to do or that I was advised that it was legal. So I just really want to make sure I understand. So you're saying he's not just relying on the opinion letter. He's relying on some other sort of review or communications by the outside law firm to people at Spine Frontier about what they can, they could do with the consulting program? I think he's relying on the fact that he would tell the jury, look, you can see there's an opinion letter. Right. There was a real law firm, you know, that was consulted to this is not sort of a fake opinion letter. A real law firm gave this to us. They were involved in all of this, which is what he said. They've been involved in every aspect of this consulting program, developing it, setting up to include providing us an opinion letter, but not limited to the opinion letter. Yeah. Quickly, if I could, because I'm now a bit confused, does the opinion letter include a statement by counsel of the assumptions that the law firm is making in saying that this proposed consulting arrangement is okay? Because they did make certain assumptions that the compensation would not depend on the volume of procedures performed. It would truly be just for services actually performed. Is that all in the opinion letter? Those caveats are included as they normally would be in an opinion letter, but at a very high level, generically, that, you know, obviously compensation can't be tied to revenue, et cetera, like basic anti-kickback propositions. So the issue here is he wants to make a whole argument to the jury about how this shows his good faith, but we don't have the communications underlying that. Did they specifically discuss what the government alleged in the indictment Humad did in terms of, you know, putting together calculations of the number of times they used Fine Frontiers products in their surgeries and how much revenue that generated? If they had a specific conversation about exactly what we alleged he did, and they warned him against doing it, then the fact that he did it afterwards, that's not showing good faith. Honestly, that shows bad faith. So by hiding all of that, the government can't really examine what was behind that. What did they actually tell him? Did they understand when they wrote that letter what he actually intended to do? Counsel, what I'm still struggling with is just, let me just put it very straight. I'm struggling with what the prejudice to the government is going to be, and let me explain my struggle. I understand from your brief that your position is that, in fact, your allegations are that, in fact, the way that this program was run, it wasn't actually a consulting program. In fact, physicians were paid for the volume of use of the medical device, whether they used it themselves or referred this device to other physicians, et cetera, right? So you're alleging that, straight up, that's how they were paid, based on use. That's clearly illegal. And the opinion letter is very clear that that is illegal. So what I'm struggling to understand, because my review of the docket indicated that Mr. Umad was just trying, he did not want to invoke any privileged communications. He wanted to rely on the letter to say lawyers were involved and bless the consulting arrangement. But the letter itself makes it clear that the lawyers do not bless paying physicians based on volume of use of the device. So what would be the prejudice to the government? Because if that is his defense, it's very easy for the government to point out, the lawyer said that was illegal, so that can't possibly negate his mens rea. And that's why I keep asking, what exactly, is there something else that you can point us to in the docket that he said he's going to rely on at trial to support this defense? Well, he's made very clear he's relying on the whole course of their consultation with  It's never been limited to the opinion letter as like, well, they gave us this opinion letter. It's that we talked about it. So course of consultation would be attorney-client privileged communications then, correct? Correct, correct. He wants to say, I can try to grab what he said, but it was something along the lines of, in his notice, I intend to elicit this information at trial, not just point to the opinion letter, but elicit testimony from people that counsel was involved in every aspect of this consulting program. Counsel's, you know, quote, in the room, they're involved in all of this. And by saying that, and then asking the jury in closing to infer from that, a good faith mens rea, he's necessarily suggesting things about those conversations that he then wants to hide under the briffle. That phrase that you just used, every aspect of the consulting arrangement, is that an accurate characterization of what he wanted to testify to? Every aspect of it? I mean, that would suggest it embraces all of the communications between himself and counsel. Yeah, that was not my understanding. So if you do have something you can point us to in the docket, that would be very helpful. I can try to find it. I don't know if I can find it right now. And you can do it in a 28-J. I'd be happy to do that. So this, he said many different things over the course of the litigation, and of course there's Spine Frontier's briefing here on appeal, which then characterizes it several different ways. I did not understand that there was any dispute about the scope of what he wanted to argue. His argument was, because I'm not actually going to affirmatively disclose what counsel said, that's privilege, the opinion letter being unprivileged, there can be no waiver, because there needs to be a disclosure for there to be an implied waiver, which is just false. This court said in XYZ Corp., a waiver is implied if a party of certain privilege places protected information, quote, in issue. And it doesn't say discloses protected information. It says places in issue. And disclosure is one way to place things in issue, but certainly not the only way. And I think asking the jury to infer certain things about the content of what counsel told you absolutely places it in issue. And separately, the question about the prejudice to the government, I think it's kind of impossible to know without seeing the documents, which we haven't done, right? It may be that there's something directly on point in the documents that would be even better than just pointing to sort of the generic letter, the opinion letter, but there's no way to know. Is there a problem here that we don't really know what he's going to argue? And if he holds up the letter and just says, there were lawyers and there's a letter, and the letter has the caveats, then the trial is really about, did these caveats happen? Like if that's all he does, then we don't get into any of this. If he does something more elaborate than that, then it becomes complicated to me. And we don't really know exactly what he's going to do. So are we really ready to decide, because, I mean, a waiver's a big deal. You would agree with that. And maybe it's appropriate, but it's not appropriate to do unless we know what he is going to do. And isn't that maybe, like, you know, I know the judge tried to narrow him down, but listening to you guys go back and forth, I'm not clear on it. Because the letter, as Judge Rickleman points out. The letter's great for you. Has caveats. Absolutely, yes. Your trial, if he holds up the letter and says, lawyers were involved, your trial would be, but there were caveats in here, and he did all the things that they identified, and so that would fall flat. So I think looking through some of the procedural history gives some, helps to characterize what he actually meant. So the whole thing came up the first time in a pretrial conference where they're talking about the opinion letter, and they said, but counsel, part of the problem, and I know you're going to, you're going to help me figure this out. Part of the problem with the procedural history is this comes up when all three are defendants, right? So it's the corporation is still a defendant, Mr. Chin is still a defendant, and Mr. Humad is still a defendant. And, you know, they're talking about a potential waiver. And then all of a sudden, the only person left is Mr. Humad. And actually, we don't really have Judge Tolwani, I don't think, at the end of the day, making all the rulings that maybe she would have made, including, you know, focusing on whether Humad is truly an alter ego versus Humad and Chin. So I'm just also wondering if you can comment on that as you talk to us about the procedural history, whether it changed over time, the scope of the defense when it just became Mr. Humad.  So I think that gets a little bit into the issue that we're referring to as the imputation issue, whatever the court wants to call it, whether Humad can waive for the company. So the Supreme Court in CFTC versus Weintraub gives the basic principle that we know a corporation is a legal fiction, and we know legal fictions aren't making decisions about waiver. It's people who make decisions about waiver. So we can be a little bit realistic and not sort of just formalistic about the issue. So the district court here made its imputation finding based on a totality of the record, including who was arguing what at what times, as I think Judge McWomen is referring to. And that procedural history shows that Chin, Humad, and Spinefrontier had an identity of interest that never went away. So if I could just highlight a few things, I think that'd help. So the issue did start with all three defendants, Chin, Humad, and the corporation, then still a defendant, advocating to make this involvement of counsel defense and against a waiver. Only if the district court indicates, you know, I think this is going to require a waiver, do Chin and Humad then file independently of the company. The company's still defendant, but they just file as individuals together and argue, but we're individuals. We can't waive for the company. So that's their July 29th motion for reconsideration by the two individuals. And reading between the lines, that filing was clearly trying to set up the possibility of Spinefrontier saying, we the company aren't making the defense, it's just the individuals making the defense, so that way you shouldn't imply a waiver. And you can tell based on some of the things they argue in that motion that that's what they're imagining may happen if they can get a favorable ruling that we as individuals cannot waive. And I point the court to pages 307 to 08 of the appendix that's part of that filing where they're saying, you know, the government's created a conflict by charging the company and the individuals, clearly trying to suggest, you know, they may pursue different defenses. So February 18th, the court correctly rejects Chin and Humad's argument. She says, you two control this company. You're the controlling officers. And it's not just that you're two of the officers, you are the only officers of the company. There's no other officers, there's no board, there's no other directors, and there's not even any other shareholders to which you have, if I may continue, to which you have some fiduciary duty. It's really just, you know, the two of you and there's no other there there. So she says, you cited no case law that would justify allowing you, defendants Chin and Humad, to use the corporate form of Spinefrontier as a shield in this way. This is the alter ego finding that the government's referencing, right? She's saying Spinefrontier's privilege claim is something that Chin and Humad are using Spinefrontier to do. That claim is them. They're making the claim. Spinefrontier is like the front for the claim. So what do they do? March 3rd, this is two weeks before Chin and Humad's scheduled joint trial. They try something else. They say now it's Chin's not going to make the defense, now it's only Humad who's going to make the defense. And these notices, they're filed almost simultaneously. They have very marked parallel language, like Chin says, speaking for only himself, Dr. Chin is going to do these things, whereas Humad says, speaking only for himself, defendant Humad's going to do these other things. So the parallel language. And they really do only make sense if you read them together. They don't make sense individually. And you can tell that from the way Spinefrontier's briefing the issue. So if you look at their reply at page 13, they actually read the two notices together too in order to make any sense of them. So they say there that Chin, who owns Spinefrontier and outranked Humad as a corporate officer, told the district court that he did not seek any waiver. Chin's notice said nothing about him owning Spinefrontier or outranking Humad as an officer. You only get that by inference from reading Humad's notice, where he said, I don't own Spinefrontier, and nor do I have ultimate control over Spinefrontier. So you really do have to read them together to make any sense out of what they're trying to do out of these two notices. So the notices look like a joint effort between Chin and Humad to get around the court's February 18th ruling. And if that is true, if it's a joint effort, then the identity of interest persists, because that joint effort is their identity of interest. The district court then gives Spinefrontier, who is the burden of showing non-waiver, a chance to make an argument. Has anyone's interest really changed? Because before, Chin and Humad were just going to make the defense together. That's obviously an identity of interest. Now Chin's saying, but I'm not going to do it. Has anyone's interest really changed? And Spinefrontier gives the court nothing, nothing. They don't say the court was wrong about who controls the company, although the court had already put on the record her view on that issue. They don't say there's any conflict between Chin and Humad that didn't previously exist. They don't give any statement, like there's a rule in the company, actually, that only Chin can waive. So although Humad is a very high-ranking officer, actually that's not how this company operates. They don't say Humad has now been walled off or recused from Spinefrontier's decision-making about privilege. So he's still there and apparently can still make any decisions he used to be able to make. And they also don't dispute the government's express allegation, which the government put in its response, the notices of coordination between Chin and Humad. So Spinefrontier doesn't say, just for the record, that's not what happened. So on this record, the government's views, the district court didn't abuse its discretion in finding imputation. We see Chin and Humad working together towards a shared interest, which is for Humad to be able to make the defense and the court not to find a waiver. And they control the company. They are the company. There is no one else that can make those decisions for the company. And the courts alluded also to the factors in the In re Grand Jury case. If you do the analysis under the factors, it comes out the same way. I mean, they're working together, clearly. And then- But counsel, but now it's just Mr. Humad left, and I guess I know we're substantially past time, but it's not clear to me that Judge Talwani ever makes a clear finding or findings along the lines of what you've just said. Because when she's, her last order that talks about the ability to waive, it really did focus on Humad and Chin together when they were still both in the case as defendants. So I, for instance, I didn't see these imputation findings or alter ego findings or some of these other findings along those lines that you talk about having been made by the district court specifically just about Mr. Humad. As to Humad. So the district courts on March 7th said not very much, right, like about the issue. She just said, I find there's no basis to bar Humad from being the defense, et cetera. So reading into that, she's relying on the things she said previously, right, where she did talk in more detail about Chin and Humad, spine frontier is the alter ego of the two of them, et cetera, and essentially saying, you know, spine frontier is the burden here and I do not see that anything material has changed, right? So that's what I understand the court was relying on is just spine frontier, I've given you a chance to tell me like what's different now than when my, I made this analysis on February 18th. The obvious thing being like there's these two notices, one saying he's not making defense. So tell me what has changed. And spine frontier did not say anything. And I think the issue of Chin not making the defense, the way the government sees it, there's three possibilities that arise from that. The first option would be that Chin opposes Humad making the defense. So not just that Chin isn't making the defense himself, but that's a given, but that he actually doesn't want Humad to make the defense either, either because it could imply a waiver or for any other reason. That would be a real conflict between them. If that were the case, the district court should, we would have expected some further analysis, you know, if Chin's opposing what Humad's doing, what does that mean for Humad's authority, et cetera, et cetera. The court didn't do that because there's no need to do that. The record was clear that Chin doesn't oppose Humad making the defense, not just because the notices were coordinated and Chin never said he opposed it, but he never requested to sever his trial, which is what you expect when individual defendants are claiming a conflict with each other. And then when you look at Spine Frontier's positions on appeal, it just corroborates that, right? There's nothing in there that suggests that Chin slash Spine Frontier oppose Humad making the defense, or there's any conflict in that sense. They're actually supportive of every- But doesn't it still go back to what the defense is? I mean, if the defense is still just, we had meetings, it resulted in a letter with caveats, therefore I'm not guilty because clearly I talked to them, then the defense is, but you didn't do the things in the letter. If it's something more involved and separate from that, then I follow you, but how do we know what they're really going to say, which then Chin would not object to the first, but he might object to the second because one might affect his attorney-client privilege where the other doesn't. Like, how do we know? So in terms of what we know, I think the way the government has characterized what Humad's defense is, is drawn from the filings in the court. So we're not trying to impose some understanding on it that's different than what I think he's said and argued to the court throughout. I think obviously this court can only rule based on its understanding of what the issue is, and that ruling then is limited by that, and if we go back and Humad, who's also not part of the appeal, says, I'm actually going to do something completely different, not that, not what Spine Frontiers sort of implied I was going to do or the government thought I meant, then of course it wouldn't bind that. I mean, it's a fact-specific ruling, fastidious sifting of the facts. I don't think the district court would think, you know, her ruling means anything categorical. It's just based on what she understood he was going to argue. I mean, what does that mean? The lawyers were involved. Well, they produced a work product that's a letter, so that's how they were involved. What else does it mean? It means they discussed setting up. So it's not just the letter. I think everyone agrees that they didn't just provide a letter, like it wasn't like a quick conversation and just a letter. So again, the government hasn't had access to these communications, right, because they are under seal. But we did receive a privilege log from the company because, of course, there's subpoenas to the company. And they would have, you know, their copies of the same communications that the law firm would have their copies of. And on that privilege log, we can see there's many communications and e-mails between. But you must have evidence that he, Humad, did things that are inconsistent with the letter that gives them permission to run this kind of program, right? That's going to be your trial, right? You have evidence that's going to be, Humad did things like sell on volume or offer, you know, we'll give you more in this consulting if you do more, do more, sell more products, right? I mean, that's your evidence. Right, right. That's what you're going to prove. Yes. Those are the allegations. Right, right. Yes. And the letter says you can't do that. The letter says you can't sell on volume. That would be illegal. This program doesn't do that, right? And so what you want to have are just the communications to prove he didn't tell them he was going to sue on volume. I mean, it's going to be an absence of communication. Presumably, he did not say to the lawyers, well, really, I'm going to sell on volume. This is going to be a kickback program, right? Right. But without an implied waiver, we are not even allowed to make those arguments to the jury because they'd say that's privilege. You can't start asking the jury to speculate what's in the privileged communications. That would be improper for the government to do. But the sum total of the communications is a document that says this is only legal unless you do certain things. And I assume your evidence will be, and he did certain things, therefore it's illegal. Well, so the opinion letter says at a high level that certain things do violate the anti-kickback. I mean, you can get that from the anti-kickback statute itself, probably, in some legal opinions. The question is, what exactly did they say to each other that led them to even say, we bless it to the point where we're giving you an opinion letter like this? I mean, was there a misrepresentation about what they were going to do? And did counsel give a very specific warning about, you know, what the fact shows Humad then went off to do? I think in terms of thinking about the prejudice to the government, the fact that he wants to make this defense, which I think the court is sort of skeptical is a not particularly good defense given the letter. I mean, that may be true, but the fact is he wants to make it. He thinks he gets a benefit from it, and he wants to make it without a waiver and hiding all those communications from the government. And the government just has no way of knowing and would be, I think, muzzled if the privilege is not weighed from, like, asking the jury to assume anything about those communications. I mean, we can't do that if they're privileged. So yeah. Okay. Thank you, counsel. Thank you. At this time, would counsel for the appellant please reintroduce himself on the record to begin? He has two minutes. Yes, Mr. Clerk. My name is Robert Peabody. I'm a counsel at the firm of Hush Blackwell in Boston, and I represent Spine Frontier Inc. A lot has passed in the last 20 minutes. I think I just want to say several, three things. First is the imputation argument has got a lot of attention from the court and from the government that I'm having a hard time wrapping my head about, you know, if he said he doesn't want to waive the privilege, even if he did have the authority to do it, then he said he doesn't want to waive the privilege. There were a lot of, you know, alleged shenanigans between both sides as they headed towards trial in late March. Spine Frontier was out of the case by then, and the matters were severed, and shortly thereafter Kingsley, Chin, and May pled to one count. So this just leaves Humad. You know, whatever reasons that he doesn't want to waive, he, Humad, we have to give him, I think, the benefit of the doubt. He's engaged in the negotiations with that law firm. He's the CFO, COO, working with them, and it's the company, it's his view, he said so much, and the company's view, we don't want to waive those communications. We have a letter. We have attachments to it, and, you know, when I read some of the cases that pooh-pooh this presence of counsel or involvement of counsel, it's really, you know, it's some pseudo advice of counsel. I would implore you, it's not advice of counsel. That is a much more complicated situation, and it does require disclosure of all the communications so that, yes, the government can look at this. In this instance, and Judge Aframe, you know, mentioned, and I referred to earlier, by simply saying, you know, strong and handy was in the room. This is their work product. It occurred over a period of time. There are no communications about what the nitty-gritty of that is, but then he can say, as the lawyers were hired, he, the counsel, the lawyers were hired, and I would ask you to consider to draw the inference that the mens rea to commit willfully the violation has not been proved. That's all that's going to be said. The government can get up and say exactly the opposite. Does this record tell us what Mr. Humad is prepared to say pursuant to this involvement of counsel defense? We were trying to get that clear earlier with opposing counsel. We did not get it. We may get a 28-J letter. Can you tell us with specificity what he is prepared to say in order to invoke this involvement of counsel defense? Well, I can't, but I think based on what the judge did quite quickly to say, okay, you're the last man standing. You're going to raise this, then here's what's going to happen. I'm going to stop it. I'm going to tell the jury it's not exculpatory, and I'm going to produce records to the government. Maybe that was abrupt. Maybe what the court should have done is say, hmm, let's explore this more. Let's have a hearing. Let's hear what you have to say. What do you want to present? And then make a determination whether it's relevant, probably is, and whether it's probative. Or is it so confusing or misleading or prejudicial to the government that you can't do it? That might be a better way to sort this out, and then the court can have a better understanding about what he intends to do and how he ... I mean, I've never used this defense before, and I have white hair, but the point is, I think there's more work to be done to see exactly, as you've all said, what is he going to say about that without disclosing the ... So at this point, we only know that he intends to invoke the involvement of counsel defense. That's all we know. Exactly how he would testify, we don't have any idea what that is. It's not been explored and not in any of the pleadings really in detail because ... It's just the note. We just have a notice from him. I mean, that's what he filed with Judge Talwani. He filed a notice saying, I do intend to invoke the involvement of counsel defense. And I think between instructions that the jury can give about cabining this, about guidance, about what kind of inference you can draw or not draw, those goes on in trials and instructions all the time. And I don't think it's out of the ordinary to at least, since they're going to see the and it's going to come in, presumably with the government, and they're going to hear about lawyers and counsel and this and that. It's not outlandish to be able to say, we hired lawyers. It goes to my state of mind. That's what Judge Sorokin said. It goes to your state of mind. It goes to your standard. Did you really intend to violate the law? And as you said, Judge Aitken, there is probably plenty of other evidence in this case that may rebut it. So I don't know why the government's so concerned about the prejudice they have about not hearing all the communications, because no one's going to hear the communications if this proceeds I mean, it doesn't even seem to add anything. You have, there is a letter signed by a lawyer that says, this is the situation as I understand it. What is it? What is it telling us that there were lawyers? And I mean, I guess my instinct, if I were the district judge, I wouldn't like, well, what does that add? I'm not letting you do that. Like, what does it add? I don't, I don't follow how it leads to the mens rea argument that is supposedly going to be made in close. Well, what does that even mean? Like, there's a letter signed by lawyers. That says very precisely that you can't reward physicians based on volume. True. But nothing had happened yet. That was a warning. It also said, please consult the lawyers for the doctors. You know, if you're a doctor, please consult your own lawyer. But it did say that the contours of the, of the consulting room were okay. They were in conformity with the AKS. And at that time, one could argue that was my mindset. That's what I believed. I was not willingly. I hired lawyers. I paid lawyers. They came in. And they did what they did. And I think that's some relevant evidence a jury could consider without going the full-born advice of counsel route. And that full-born advice of counsel would be, I did it because they told me I could? I don't know. I mean, is that what a full-born advice, that's what a full-born, that's my understanding of that. Like, I am not guilty because I went to my lawyers. I told them all the facts and they told me this proposed course of conduct was lawful. It's a reasonable inference, but I don't know. I don't know. I've not seen those documents either. And maybe they are useful and practical, and maybe they lay out all the contours and the guardrails that he can't violate and so forth that the company has to follow. That certainly is the intention in the letter, if you read between the lines in the letter, one-page letter. But what happened after that is what happened after that. And the government presumably has evidence to present on that. So, thank you very much for the... I'm sorry to prolong this, but just, I was intrigued by something you said a few moments ago. Are you suggesting that the order entered by Judge Talwani was an abuse of discretion in the sense that she did not have all of the information that she needed in order to make the ruling that she did, that if, in a very general sense, you invoke this defense of counsel defense, you waive the privilege with respect to all communication? Is it your position that to make that what you would characterize as a sweeping ruling, she had to know more about what Mr. Umad was actually going to say and whether, in light of that... She did know more. I'm sorry? When you say she had to know more, you're implying that she already did know more to make that determination. Is that what you're saying? Well, no. I'm asking, do you feel she needed to know more than she did in order to enter the order that she did? I would recommend that it go back to the District Court and they sort this out in more detail exactly what the length and breadth of this thing is, of this defense is. But by imposing the implied waiver, surely on his statement that he wished to pursue this when there's some case law that supports it and there's no, in my view, no fight between Kingsley Chin, the company, and him, nobody wants to disclose anything, that imposing the waiver is harsh. Instructing the jury may be appropriate, although I think the instruction should be, you're the judges of the facts, you will decide whether there's a reasonable inference here or not, or take no steps at all. I think there's a more deliberate process to allow this to come before the jury because they're going to hear it anyway. The question is, how can you spin it or how can you argue it? But yes, I would agree with you. I don't think she had a sufficient amount of information to make that proper determination. I think it was at least... Thank you. Thank you, judges. Thank you, counsel. That concludes argument in this case.